```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
JOE HAND PROMOTIONS, INC.,

                         Plaintiff,                 09-CV-6161

            v.                                      **DECISION**
                                                    **and ORDER**
LEE CAPOMACCIO, individually and d/b/a
PINEAPPLE JACKS a/k/a PINEAPPLE JACK'S
GRILL & BAR; and TC & COMPANY, LTD., an
unknown business entity d/b/a PINEAPPLE
JACKS a/k/a PINEAPPLE JACK'S GRILL &
BAR,

                         Defendants.
_____
```

## **INTRODUCTION**

Plaintiff, Joe Hand Promotions, Inc. ("Plaintiff"), brings this action against defendants Lee Capomaccio (Capomaccio") individually and d/b/a PINEAPPLE JACKS a/k/a PINEAPPLE JACK'S GRILL & BAR and TC & COMPANY, LTD., an unknown business entity d/b/a PINEAPPLE JACKS a/k/a PINEAPPLE JACK'S GRILL & BAR (collectively "defendants"), alleging that defendants unlawfully intercepted and exhibited the program entitled "Ultimate Fighting Championship 59: 'Reality Check'" at its commercial establishment in violation of 47 U.S.C. §§605 and 553. Plaintiff is seeking to recover statutory damages plus attorneys' fees and costs. The Clerk of the Court has issued an Entry of Default as to the defendants who now move to set aside the entry of a default, pursuant to Rule 55(c) of the Federal Rules of Civil Procedure. In addition, defendants request leave of this Court to serve a late Answer in response to the Summons and Complaint. Plaintiff has opposed the defendants' motion. For the reasons set

forth below, the motion to vacate the entry of the default is granted and defendants are granted leave to answer the Complaint.

**BACKGROUND**

Plaintiff commenced this action on April 9, 2009 and served defendants with a copy of the Summons and Complaint as well as related documents on May 1, 2009. A copy of the Proof of Service for each defendant was filed with the Court on June 29, 2009. On June 30, 2009, plaintiff filed a Request to Enter Default against defendants. The Clerk of the Court issued an Entry of Default as to the defendants on July 2, 2009. Defendants' counsel entered an appearance on July 7, 2009 on behalf of all the defendants. On August 13, 2009, defendants filed the Motion to Set Aside Default, which is currently before the Court for resolution.

Defendants claim that upon being served with the Summons and Complaint, Capomaccio reached out to plaintiff's counsel two separate times by phone. See Affirmation of Frank G. Montemalo ("Montemalo Aff."), ¶7. On the first attempt, Capomaccio believes he spoke to a secretary at plaintiff's counsel's office and per the conversation he was under the impression that the parties would attempt to resolve the matter without further Court intervention. See id., ¶8.[1] Capomaccio asserts that he was told that no action would be taken on

---

[1] Capomaccio states that on or about May 4 and 5, 2009 he telephoned plaintiff's counsel's office inquiring as to the purpose of the Complaint. See Affidavit of Lee Capomaccio ("Capomaccio Aff."), ¶7. The secretary assured him that plaintiff's counsel, Thomas P. Riley, would return his call and discuss a resolution of the matter. See id. He also asked the secretary to provide information and/or proof substantiating the claims made in the Complaint and he was told proof would be provided. See id. Capomaccio also claims he was informed by the secretary that he did not need to do anything regarding answering the Complaint since Mr. Riley would be calling him to discuss resolution of the matter. See id.

the Complaint while discussions were ongoing concerning a possible resolution of the case. See id. Thereafter, Capomaccio contends he made another phone call to plaintiff's counsel's office where he was once again reassured by the secretary, who claimed she was authorized to speak to Capomaccio about the case, that he did not need to retain counsel to answer the Complaint. See Capomaccio Aff., ¶8. The secretary informed Capomaccio that Mr. Riley would return his call to discuss the allegations in the Complaint. See id.

Plaintiff's counsel claims that nobody in his office has authority to speak on his behalf concerning settlement of any pending matter. See Affirmation of Thomas P. Riley ("Riley Aff."), ¶3.[2] In addition, plaintiff's counsel disputes that Capomaccio called his office twice. He claims that Capomaccio only called once in late May 2009 and that there were no discussions with him regarding settlement or Capomaccio's obligations relating to the Complaint. See id., ¶4. According to Capomaccio, sometime in late June, a staff person named Sarah from Mr. Riley's office left him a voice message on his cell phone. See Capomaccio Reply Aff., ¶7. The voice message indicated in sum and substance that she was returning Capomaccio's call, thinking

---

[2] Mr. Riley states that every member of his staff are trained not to give any settlement information to callers and are instructed to inform the caller that specific questions concerning any cause of action, including settlement options, must be answered solely by Mr. Riley. See id. Moreover, Mr. Riley contends that nobody has the authority to provide proof of allegations raised in a complaint. See id.

he was the attorney for the defendants, to discuss the case. See id.[3] However, plaintiff subsequently requested that a default be entered against defendants for failing to timely respond to the Summons and Complaint. See Montemalo Aff., ¶9.

Following notice to defendants of the entry of default, they immediately retained Mr. Montemalo to represent their interests in this matter and an appearance was entered on behalf of defendants in this Court. See Doc. #9. Consequently, defense counsel contacted plaintiff's counsel to request permission to file an Answer to the Complaint and advised that defendants had a reasonable excuse for the default and a meritorious defense. See Montemalo Aff., ¶12. In response, plaintiff's counsel asked for proof of the meritorious defense but refused to accept a late Answer for the Complaint. See id., ¶13. On July 23, 2009, defense counsel sent a letter to plaintiff's counsel in an attempt to resolve the matter without need for judicial intervention and asking plaintiff's counsel to accept defendants' proof of a meritorious defense in exchange for a promise to discontinue this action. See id., ¶14. To date plaintiff's counsel has not responded to this request. See id., ¶15. Defendants have filed a motion to vacate the Entry of Default on grounds that the default was not willful; that defendants have a meritorious defense

---

[3]There is also a history of previous attempts by Mr. Riley to discuss resolution of this case as seen by the letter sent by Mr. Riley dated June 22, 2007 and letter sent by Mr. Montemalo dated October 11, 2007 discussing settlement. See id.

and no prejudice will result to plaintiff if default is vacated. Plaintiff opposes defendants' motion.

## DISCUSSION

### I. Defendants' Motion to Set Aside Entry of Default

### A. Standard of Review

Rule 55 sets forth the procedural steps for obtaining and vacating an entry of a default judgment. Rule 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules...the clerk shall enter the party's default." Fed.R.Civ.P. 55(a). Following entry of default upon the plaintiff's request, defendants may seek to set aside the entry of default pursuant to Rule 55(c). See Meehan v. Snow, 652 F.2d 274, 276 n. 5 (2d Cir.1981) ("Entering a default pursuant to Rule 55(a) and affording a defendant an opportunity to move to vacate it pursuant to Rule 55(c) is the preferable course"). If a Rule 55(c) motion is not made or is unsuccessful, and if no hearing is necessary to determine damages, a default judgment may be entered by the court or by the clerk. See id. at 276. Under Rule 55(c), the court may set aside an entry of default "[f]or good cause shown." Fed.R.Civ.P. 55(c).

As the Second Circuit has explained, "[b]ecause Rule 55(c) does not define the term 'good cause,' we have established three criteria that must be assessed in order to decide whether to relieve a party from default or from a default judgment." Enron Oil Corp. v.

Diakuhara, 10 F.3d 90, 96 (2d Cir.1993) (citations omitted). Specifically, the three-pronged inquiry to determine whether good cause has been shown to set aside an entry of default are: (1) whether the default was willful; (2) whether setting aside the default will prejudice the adversary; and (3) whether a meritorious defense is presented. See id.; accord Comm. Bank of Kuwait v. Rafidain Bank, 15 F.3d 238, 243 (2d Cir.1994); See Pecarsky v. Galaxiworld.Com Ltd., 249 F.3d 167, 171 (2d Cir.2001). Other equitable considerations include whether the failure to follow a rule of procedure was a mistake made in good faith, and whether the entry of default would bring about a harsh or unfair resolution. See Enron Oil Corp., 10 F.3d at 96; Brown v. Gabbidon, 2007 WL 1423788, at *2 (S.D.N.Y.2007) (Court also permitted to consider relevant equitable factors including whether failure to appear "was 'a mistake made in good-faith and whether the entry of default would bring about a harsh or unfair result.'") (quotations omitted).

"Default judgments 'are generally disfavored and are reserved for rare occasions.'" State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 168 (2d Cir.2004) (quoting Enron Oil Corp., 10 F.3d at 96). The universally preferred course is resolution of disputes on their merits. Thus, "good cause" under Rule 55(c) "should be construed generously." Enron Oil Corp., 10 F.3d at 96. For example, "when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the

defaulting party." Id.; Powerserve Int'l, Inc. v. Lavi, 239 F.3d 508, 514 (2d Cir. 2001) (Any doubt should be resolved in favor of the defaulting party). Finally, "[t]he dispositions of motions for entries of defaults and default judgments and relief from the same under Rule 55(c) are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." Id. at 95 (citing Action S.A. v. Marc Rich & Co., 951 F.2d 504, 507 (2d Cir.1991); Traguth v. Zuck, 710 F.2d 90, 94 (2d Cir.1983)).[4]

**B. Discussion**

As set forth below, after carefully analyzing the circumstances of this case under the above-referenced standard, the Court concludes that the entry of the default should be set aside under Rule 55(c). In doing so the Court analyzed the relevant factors as follows.

**1. Willfulness**

Defendants contend that their failure to appear in the instant action was not willful since Capomaccio reached out to plaintiff's counsel two separate times by phone. See Defs. Br. at 4; see also Montemalo Aff., ¶7. On both attempts he spoke to a secretary at plaintiff's counsel's office who claimed she was authorized to speak

---

[4] The Second Circuit also has noted that "[a]lthough the factors examined in deciding whether to set aside a default or a default judgment are the same, courts apply the factors more rigorously in the case of a default judgment...because the concepts of finality and litigation repose are more deeply implicated in the latter action." Enron Oil Corp., 10 F.3d at 96 (citation omitted).

to Capomaccio about the case, and based on those conversations he was under the impression that the parties would attempt to resolve the matter without further Court intervention. See id., ¶8. In addition, Capomaccio claims that he was informed no action would be taken on the Complaint while discussions were ongoing concerning a possible resolution of the case and that he did not need to retain counsel to answer the Complaint. See id.; see also Capomaccio Aff., ¶8. In response, plaintiff's counsel argues that nobody in his office has authority to speak on his behalf concerning settlement of any pending matter. See Pl. Br. at 5; see also Riley Aff., ¶3. Also, plaintiff's counsel disputes that Capomaccio called his office twice. He claims that Capomaccio only called once in late May 2009 and that there were no discussions with him regarding settlement or Capomaccio's obligations relating to the Complaint. See id., ¶4.

As discussed below, the Court finds insufficient evidence in the record that defendants' failure to appear was willful. The Second Circuit has held that a finding of willfulness is properly based on egregious or deliberate conduct. See Am. Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir.1996) ("Gross negligence can weigh against the party seeking relief from a default judgment, though it does not necessarily preclude relief"). "'Willfulness,' in the context of a default...refer[s] to conduct that is more than merely negligent or careless." See SEC v. McNulty, 137 F.3d 732, 738 (2d Cir.1998) (citations omitted); accord Am. Alliance Ins. Co., 92 F.3d

at 60 (requiring "bad faith, or at least something more than mere negligence, before rejecting a claim of excusable neglect based on an attorney's or a litigant's error"); see also Gonzalez v. City of New York, 104 F.Supp.2d 193, 196 (S.D.N.Y.2000) ("[A] default may be found to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained").

In Gonzalez, the court found that the default was not willful because counsel for the defendants had explained that he did not believe a formal response was required while the parties were engaged in good-faith settlement negotiations. See id. In addition, the Court noted that "[a]lthough the individual defendants should have answered despite settlement negotiations, their failure to do so does not evince the type of bad faith which would warrant default judgments against them." Id. Like Gonzalez, there is no indication that defendants' failure to appear was willful. Here, defendants' answer was due on May 21, 2009. Defendants admittedly did not answer the Complaint by that date. However, in an affidavit submitted in support of defendants' motion, Capomaccio represents that its failure to respond in a timely fashion was not willful.

Defendants, through Capomaccio reached out to communicate with plaintiff's counsel regarding a possible settlement or resolution of the case, which resulted in defendants being under the impression that the parties would resolve the matter without further Court intervention. Defendants' explanation is not indicative of willful

evasion of a duty to respond, or of egregious or deliberate conduct ignoring the service of process, that would support a finding of willfulness. See Brien v. Kullman Indus., Inc., 71 F.3d 1073, 1078 (2d Cir.1995) (refusing to find willfulness where defendant failed to file Answer because it received misinformation from clerk's office regarding docket number); Standard Enter. v. Bag-It, Inc., 115 F.R.D. 38, 39 (S.D.N.Y. 1987)(Court concluded "it would be going too far to call the default 'willful,' particularly giving the dispatch with which [defendants] and counsel acted once they finally learned that [defendant] was being sued.")

Plaintiff however, subsequently filed papers requesting that a default be entered against defendants for failing to timely respond to the Summons and Complaint. The Entry of Default was made on July 2, 2009 and defendants received notice on the same day. Defendants immediately took action upon receipt of this Court's Entry of Default by retaining counsel to represent their interests in this matter and entering an appearance on their behalf. See Doc. #9. Thereafter, defense counsel took appropriate steps to vacate the default by contacting plaintiff's counsel to request permission to file an Answer to the Complaint and that defendants had a reasonable excuse for the default and had a meritorious defense. See Montemalo Aff., ¶12. In response, plaintiff's counsel asked for proof of the meritorious defense but refused to accept a late Answer. See id., ¶13. Under the lenient standard of Rule 55(c), the Court must resolve

any doubt about defendants' willfulness in favor of the defendants. See Enron Oil Corp., 10 F.3d at 98. Accordingly, given the lack of clear evidence of a willful failure to appear in this case, this factor weighs in the defendants' favor.

**2.  Prejudice to Plaintiff**

For a delay in filing an answer to prejudice plaintiff, the delay must result in the "loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." See Jones v. Herbert, 2004 WL 3267285, at *3 (W.D.N.Y. 2004); Davis v. Musler, 713 F.2d 907, 916 (2d Cir.1983); Brown, 2007 WL 1423788, at *3 (A plaintiff may demonstrate prejudice by showing that his "'ability to pursue the claim has been hindered since the entry of the judgment' or by 'the loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment'") (quoting Farrell v. Cty. Van & Storage, Inc., 1996 WL 705276, at *3 (E.D.N.Y.1996)).

Plaintiff argues that it will be prejudiced if the Court sets aside the entry of default. See Pl. Br. at 7. Plaintiff claims "the fact that Capomaccio cannot produce relevant evidence in support of his Motion...it is quite possible that he already has lost evidence." See id. In addition, plaintiff argues that the opportunity for fraud is present since Capomaccio submitted a telephone bill that had no bearing to this action. See id. Defendant responds by including the correct phone bill showing a five minute phone call placed to the law

office of plaintiff's counsel on May 27, 2009. See Capomaccio Reply Aff., ¶5. Plaintiff further argues that the actions of defendants in responding to the entry of default show that delay may become a significant issue. See Pl. Br. at 8. According to plaintiff, defense counsel entered an appearance on July 6, 2009 and did not file the Motion to Set Aside Default until on August 13, 2009. See id.

Plaintiff may argue that it was inconvenienced by the delay, but delay alone is an insufficient basis for a finding of prejudice. See Davis, 713 F.2d at 916. Further, on July 23, 2009 defense counsel sent a letter to plaintiff's counsel in an attempt to resolve the matter without need for judicial intervention and asking plaintiff's counsel to accept defendants' proof of a meritorious defense in exchange for a promise to discontinue this action. See id., ¶14. To date plaintiff's counsel has not responded to this request. See id., ¶15. Accordingly, there is evidence that defendants were attempting to resolve the matter between the time defense counsel filed an appearance and the time it filed the motion to vacate the entry of default. Moreover, although an entry of default was entered by the Clerk of the Court, no default judgment has yet been granted or entered by the Court.

The Court finds that plaintiff has not provided persuasive facts to establish that it would be prejudiced in vacating the default and allowing defendants to respond to the Complaint. There has been no entry of a default judgment in this case and, therefore, plaintiff

cannot establish any reliance on a perfected judgment. Further, plaintiff has provided no proof that evidence has been lost as a result of the delay, or that fraud or collusion are likely to result by granting defendants' request. Thus, the lack of prejudice to plaintiff militates in favor of defendants' request.

### 3. Meritorious Defense

With regard to the meritorious defense factor of Rule 55, the Second Circuit has held: A defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense. The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense. See Enron Oil Corp., 10 F.3d at 98 (internal citations omitted); accord McNulty, 137 F.3d at 740; Pecarsky, 249 F.3d at 173. Plaintiff asserts in its Complaint that it paid for and was thereafter granted the exclusive nationwide television distribution rights to Ultimate Fighting Championship ("UFC") 59 that took place and was telecast on April 15, 2006 ("Program"). In addition, plaintiff claims that pursuant to the contract granting plaintiff exclusive distribution rights, plaintiff entered into sub-licensing agreements with various commercial establishments to permit the public viewing of the Program. According to the Complaint, defendants, without authorization, unlawfully intercepted and

exhibited the Program, which took place on April 15, 2006 at its commercial establishment in violation of 47 U.S.C. §§605 and 553.

Here, defendants contend that from December 12, 2005 through January 11, 2007, they purchased television program and telecasts from a bona-fide commercial account from Time Warner Cable ("TWC"). See Capomaccio Aff., ¶18., Ex. C. Defendants further argue that they believed in good faith that TWC was a bona-fide commercial account, and that the purchase and showing of any program from TWC was lawful. See id., ¶19. Plaintiff argues that the bill defendants attach as an exhibit purporting to show payment for the Program does not reflect the correct UFC event. According to plaintiff, while the bill does reflect the purchase price for a UFC event, it was UFC 65 on November 18, 2006, meanwhile the Program at issue here is for UFC 59, which was broadcast on April 15, 2006. However, defendants contend that plaintiff has offered no evidence to rebut their position other than plaintiff's counsel's own self-serving conclusory statements. See Capomaccio Reply Aff., ¶9. In addition, defendants have set forth their denials and defenses in their Answer attached as Exhibit E to Montemalo's Aff. in support of defendants' Motion to Set Aside Default, which presents a more extensive explanation of its defense. The Court thus concludes that the information contained within the Affidavit of Lee Capomaccio as well as other attached exhibits are sufficient at this stage of the litigation, for purposes of Rule 55, for the Court to conclude that it would be unfair to deprive

defendants of an opportunity to present their defense in court, regardless of whether it will ultimately carry the day.

### 4. Equitable Factors

Based upon the circumstances relevant to the entry of the default, defendants' prompt action to remedy the default and the fact that the entry of default would result in "a harsh or unfair result" by denying defendants the opportunity to defend the action on the merits, the balance of equities also weighs heavily in favor of setting aside the default. See Altamirano v. Copaiague Funding Corp., 2007 WL 1232178, at *3 (D.Conn.2007) (holding that denial of opportunity to litigate merits of case constituted "harsh or unfair result"). In sum, as the Court finds that the Rule 55 factors and equitable considerations as a whole weigh in favor of setting aside the entry of default against defendants, the Court grants defendants' motion to set aside the entry of default.

## CONCLUSION

For the reasons set forth above, defendants' motion to set aside the entry of the default is granted pursuant to Rule 55(c). Defendants are granted leave to answer the Complaint. Accordingly, defendants shall have 20 days from the date of this order in which to file an Answer to plaintiff's Complaint.

**ALL OF THE ABOVE IS SO ORDERED.**

                                        s/Michael A. Telesca
                                            MICHAEL A. TELESCA
                                   United States District Judge

Dated:    Rochester, New York
            October 6, 2009